Exhibit A

# OPERATING AGREEMENT

## OF

### 152 BROADWAY HAVERSTRAW NY LLC

This Operating Agreement (this "Agreement") of 152 Broadway Haverstraw NY LLC (the "Company"), is entered into as of the 11th day of December 2009 by Joseph Goldberger and Joseph Menczer (the "Members"), as the Members of the Company.

Pursuant to and in accordance with the Limited Liability Company Law of the State of New York, as amended from time to time (the "Act"), the Members hereby state as follows:

1.   <u>Name.</u> The name of the limited liability company shall be 152 Broadway Haverstraw NY LLC.

2.   <u>Office.</u>  The principal office of the Company is a New York Limited Liability Company, having an address at 152 Broadway, Haverstraw, NY or such other place or places as the Members shall determine.

3.   <u>Term.</u>  The term of the Company shall commence as of the date of filing of the Articles of Organization of the Company with the Department of State of the State of New York and the Company shall be dissolved and its affairs wound up as provided in said Articles, in this Agreement or as otherwise provided in said Articles, in this Agreement or as otherwise provided in the Act.

4.   <u>Purpose.</u> The Company is formed for the purpose of engaging in any lawful act or activities for which limited liability companies may be formed under the Act and engaging in any **and all** activities necessary or incidental to the foregoing.

5.   <u>Members.</u> The name and the mailing address of the Members are as follows:

| <u>Name</u> | <u>Address</u> | <u>Interest</u> |
|---|---|---|
| Joseph Goldberger | 479 Bedford Ave, Brooklyn NY | 50% |
| Joseph Menczer | 669 Bedford Ave, Brooklyn, NY | 50% |

The Members are authorized to admit additional Members and/or create different classes of Members.

6.   Management Powers. The business and affairs of the Company shall be managed jointly by Joseph Goldberger and Joseph Menczer.

7.   <u>Capital Contributions.</u> The initial capitalization of the Company shall consist of $100 contributed by the Members.

8.    <u>Additional Contributions.</u> The Members are not required to make any additional capital contribution to the Company, provided however, that additional capital contribution may be made at such time and in such amounts as the Members shall determine.

9.    <u>Allocation of Profits and Losses.</u> The Company's profits and losses shall be allocated 100% to the Members.

10.    <u>Distributions.</u> Distributions shall be made to the Members at the times and in the aggregate amounts determined by the Members and in accordance with the same percentages as profits and losses are allocated.

11.    <u>Assignments.</u> The Members may not assign or transfer in whole or in part his interest in the Company.

12.    <u>Withdrawal of a Members; Termination of the Company.</u> So long as they are the sole Members, the Members may withdraw from the Company, provided that such withdrawal from the Company shall result in the constructive termination of the Company. If there is more than one Member, then no Members shall be permitted to withdraw from the Company or demand a return or payment of his capital contribution.

13.    <u>Admission of Additional Members.</u>  The Members may cause the Company to admit one or more additional Members to the Company.

14.    <u>Liability of Members.</u> The Members shall not have any liability for the obligation or liabilities of the Company except to the extent provided in the Act.

15.    **Governing Law. This Agreement shall be governed by, and constructed under, the laws of the State of New York, all rights and remedies being governed by said laws**

IN WITNESS WHEREOF, the undersigned, intending to be legally bonded hereby has duly executed this Operating Agreement.

_____
Joseph Goldberger

_____
Joseph Menczer

# Exhibit B



Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 17-22242-rdd

4   Adv. Case No. 17-08215-rdd

5   - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   BROADWAY EQUITY HOLDINGS LLC,

9

10          Debtor.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  BROADWAY EQUITY HOLDINGS LLC,

13                Plaintiff,

14          v.

15  152 BROADWAY HAVERSTRAW NY LLC et al.,

16                Defendants.

17  - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19

20

21

22

23

24

25

1            United States Bankruptcy Court

2            300 Quarropas Street

3            White Plains, NY 10601

4

5            October 31, 2017

6            10:45 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   NAROTAM RAVI



Page 3

1   HEARING re Pre-Trial Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:   Sonya Ledanski Hyde

Page 4

1   A P P E A R A N C E S :

2

3   BACKENROTH FRANKEL & KRINSKY, LLP

4        Attorneys for the Debtors

5        800 Third Avenue, 11th Floor

6        New York, NY 10022

7

8   BY:  MARK A. FRANKEL

9

10  LAW OFFICE OF JEFFREY FLEISCHMANN PC

11        Attorneys for the Defendants

12        26 Broadway

13        New York, NY 10004

14

15  BY:  GARY HELLER

16        JEFFREY FLEISCHMANN

17

18  RUBIN LLC

19        Attorneys for the C. Fink Family Trust

20        345 Seventh Avenue, 21st Floor

21        New York, NY 10001

22

23  BY:  PAUL A. RUBIN

24

25

1     ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

2          Attorneys for the Debtor

3          875 Third Avenue

4          New York, NY 10022

5

6     BY:  FRED B. RINGEL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                P R O C E E D I N G S

2            THE COURT:  Okay.  Last but not least is Broadway

3    Equity Holdings LLC.  And, more specifically, Broadway

4    Equity Holdings LLC v. 152 Broadway Haverstraw LLC et al,

5    and the pretrial conference in that.

6            MR. RINGEL:  Yes.  Good morning, Your Honor.  Fred

7    Ringel, Robinson Brog Leinwand Greene Genovese & Gluck, on

8    behalf of the Debtor, Broadway Equity Holdings LLC.

9            MR. RUBIN:  Good morning, Your Honor.  Paul Rubin

10   on behalf of the C. Fink Family Trust and the -- and the ten

11   other parties listed in my letter to Your Honor.  I won't

12   name them all right now.  They're the subject of this --

13           THE COURT:  It's the people aligned with

14   Wertzberger and Wolcowitz?

15           MR. RUBIN:  Correct.

16           THE COURT:  All right.  Okay.

17           MR. RUBIN:  They're members -- some of them are

18   members of the Debtor; some of them are Creditors of the

19   Debtor.

20           THE COURT:  Right.  Okay.

21           MR. FLEISCHMANN:  Good morning, Your Honor.

22   Jeffrey Fleischmann on behalf of the Defendants, or the ones

23   listed in the letter, as well.

24           THE COURT:  Right.  Good morning.

25           MR. FRANKEL:  Mark Frankel, Backenroth Frankel &

Page 7

1    Krinsky, bankruptcy counsel for the Defendants.

2              THE COURT:  Okay.

3              MR. HELLER:  Okay.  Gary Heller.  I'm of counsel

4    to Mr. Fleischmann.

5              THE COURT:  Okay.  Good morning.  Right.  So, I

6    mean, we -- a fair amount has happened in this adversary

7    proceeding since the parties were here in front of me last,

8    including an amended scheduling order and the stipulation on

9    the complaint dismissing all but the first and second

10   claims, and dealing with the motion to dismiss and the

11   motion to add parties.  And there's a new motion to dismiss;

12   I guess that would be heard, if at all, later.

13             MR. RINGEL:  No, Your Honor.  The -- that motion

14   was resolved.  Are you talking about the Sterling Bank

15   motion?

16             THE COURT:  No.  I thought that -- on the

17   counterclaims.

18             MR. RINGEL:  Oh.  That, yes, that motion is in the

19   order dealing with the causes of action, the third, fourth,

20   fifth, and sixth causes of action.

21             THE COURT:  Right.

22             MR. RINGEL:  Enjoining the parties and adding the

23   counterclaims.  There is a scheduling order in that

24   stipulation.

25             THE COURT:  Right.

Exhibit C

```
 1

 2          UNITED STATES BANKRUPTCY COURT
            SOUTHERN DISTRICT OF NEW YORK
 3          -------------------------------------------X
            In re:
 4
            BROADWAY EQUITY HOLDINGS LLC,    Case No.:
 5                                           17-22242

 6                                DEBTOR.
            -------------------------------------------X
 7          BROADWAY EQUITY HOLDINGS LLC,

 8                                PLAINTIFF,

 9                  -against-

10          152 BROADWAY HAVERSTRAW LLC, BLUE
            BEVERAGE GROUP, INC., JOSEPH GOLDBERGER,
11          TOBY WEINBERGER, MFT HOLDINGS LLC,
            ESTATE OF JENO GUTTMAN, RYVKIE
12          GOLDBERGER, VILLAGE OF HAVERSTRAW
            RECEIVER OF TAXES, COMMISSIONER OF
13          FINANCIE OF THE COUNTY OF ROCKLAND, NEW
            YORK STATE DEPARTMENT OF TAXATION AND
14          FINANCE, "JOHN DOES NO 1" through "JOHN
            DOE NO 10", and said names being
15          fictitious, it being the intention of
            Plaintiff to designate all persons,
16          partnerships, corporations, or other
            entities in possession of the premises
17          as tenant or otherwise any/or all persons
            or entities having or claiming an interest
18          in said premises,

19                                DEFENDANTS.
            -------------------------------------------X
20          (Caption continues.)

21

22                      DATE:  April 11, 2018

23                      TIME:  10:32 A.M.

24

25              (DEPOSITION of JOEL WERTZBERGER)
```

DIAMOND REPORTING 877-624-3287 info@diamondreporting.com

```
 1

 2      UNITED STATES BANKRUPTCY COURT
        SOUTHERN DISTRICT OF NEW YORK
 3      -------------------------------------------X

 4      BLUE BEVERAGE GROUP, INC., JOSEPH
        GOLDBERGER and JOSEPH MENCZER,
 5

 6                     COUNTERCLAIM PLAINTIFFS,

 7              -against-

 8      BROADWAY EQUITY HOLDINGS LLC, JOEL
        WERTZBERGER a/k/a JOEL WURTZBERGER,
 9      ARON WOLCOWITZ a/k/a ARON JACOB
        WOLKOWITZ a/k/a JACK WALKOWITZ and
10      JUDY MINSTER,

11
                     COUNTERCLAIM DEFENDANTS.
12      -------------------------------------------X

13                     DATE:  April 11, 2018

14                     TIME:  10:30 A.M.

15

16                     DEPOSITION of the Counterclaim

17      Defendant, JOEL WERTZBERGER, taken by the

18      respective parties, pursuant to a Court

19      Order and to Federal Rules of Civil

20      Procedure, held at the offices of

21      Backenroth, Frankel & Krinsky,

22      LLP, 800 Third Avenue, New York, New York

23      10022, before Sylvia Kemp, a Notary Public

24      of the State of New York.

25
```

```
 1

 2      A P P E A R A N C E S:

 3

 4      ROBINSON BROG LEINWAND GREENE GENOVESE &
        GLUCK, P.C.
 5           Attorneys for the Plaintiff
             BROADWAY EQUITY HOLDINGS, LLC
 6           875 Third Avenue
             New York, New York 10022
 7      BY:  FRED B. RINGEL, ESQ.

 8

 9      LAW OFFICES OF JEFFREY FLEISCHMANN, P.C.
             Attorneys for the Defendants/
10           Counterclaim Plaintiffs
             152 BROADWAY HAVERSTRAW LLC, BLUE
11           BEVERAGE GROUP, INC., JOSEPH
             GOLDBERGER, TOBY WEINBERGER, MFT
12           HOLDINGS LLC
             150 Broadway, Suite 900
13           New York, New York 10038
        BY:  JEFFREY FLEISCHMANN, ESQ.

14

15
        RUBIN, LLC
16           Attorneys for Counterclaim Defendant
             JOEL WERTZBERGER
17           345 Seventh Avenue, 21st Floor
             New York, New York 10001
18      BY:  PAUL RUBIN, ESQ.

19

20      ALSO PRESENT:

21           JOSEPH GOLDBERGER

22           ABRAHAM BACKENROTH, ESQ.,
             Backenroth, Frankel & Krinsky, LLP
23
             JOSEPH MENCZER
24
             JUDY MINSTER
25
```

DIAMOND REPORTING 877-624-3287 info@diamondreporting.com

```
 1                    J. WERTZBERGER

 2          foundation.

 3          A.   Other than a general description I

 4     just gave you, I don't recall the specific

 5     details of what I asked and words I used, et

 6     cetera.

 7          Q.   How long ago did you have that

 8     conversation?

 9               MR. RUBIN:  Objection.  Lacks

10               foundation.

11          A.   I believe in 2015.

12          Q.   So you haven't discussed the case

13     with Ms. Minster since 2015?

14               MR. RUBIN:  Objection.  Lacks

15               foundation.

16          A.   Since 2015, I have talked with

17     Ms. Minster at times about the case.

18          Q.   What did you say to her?

19               MR. RUBIN:  Objection.  Asked and

20               answered.

21               MR. BACKENROTH:  You have to

22               answer the question.  His objection is

23               federal stipulations which means he

24               reserves his objections for trial but

25               you have to answer the question.
```

1         J. WERTZBERGER

2             MR. RUBIN:  Counsel, are you

3     taking the deposition or is he taking

4     the deposition?

5             MR. BACKENROTH:  No, I want to

6     make it clear so we don't have a

7     problem because he is sitting there and

8     not answering questions.  We are not

9     taking a video of this so I want to

10    make it clear the man is supposed to be

11    answering the questions and not sitting

12    there and not responding.

13            MR. RUBIN:  I think he is thinking

14    because he is trying to answer the

15    questions and asked three times.  There

16    should be one person asking the

17    questions.

18            MR. BACKENROTH:  The man testified

19    that in addition to the period of time

20    2015 he had other conversations from

21    time to time.  We are trying to explore

22    what are those conversations and what

23    those times to times are.

24            MR. RUBIN:  He didn't say times to

25    times.

DIAMOND REPORTING 877-624-3287 info@diamondreporting.com

```
 1              J. WERTZBERGER
 2         MR. BACKENROTH:  Yes he did, the
 3    record speaks for itself.
 4         MR. RUBIN:  Do you want to take
 5    the deposition?
 6         MR. BACKENROTH:  No, I want to
 7    make sure it moves.
 8         MR. RUBIN:  But there should be
 9    only one person asking the questions
10    and following up with the witness, not
11    two people.
12         MR. RINGEL:  Your explanation was
13    given but I don't think you were in the
14    room but Jeffrey did in the beginning
15    when he explained the deposition that
16    he has to answer any questions unless
17    directed not to answer.
18         MR. BACKENROTH:  But the witness
19    was not responding, he was sitting
20    there and that is the reason I
21    interjected.
22         MR. RUBIN:  The witness is
23    thinking because he was asked questions
24    about conversations over a few years.
25    A.    I ask you to give me a chance to
```

1                    J. WERTZBERGER

2          answer the questions and not interject your

3          record.

4                    MR. BACKENROTH:  The impression I

5                    got was you were simply not answering

6                    but if you are thinking then give us an

7                    answer when you are finished thinking.

8          A.    I don't have specific

9          recollections of what I said or she would

10         answer but I know I discussed the case with

11         her.

12         Q.    How many times do you recall

13         discussing the case with her?

14         A.    Say at least five or six times.

15         Q.    Do you recall when?

16         A.    Between the period 2015 and

17         present.

18         Q.    Do you recall the dates or an

19         approximation thereof?

20         A.    Between the period of 2015 and

21         2018.

22         Q.    Let's break it down.  I think you

23         said the first conversation was in 2015.  Is

24         that right?

25         A.    First conversation was before the

```
 1                    J. WERTZBERGER
 2      or anything like that?
 3                MR. RUBIN:  Objection to form.
 4      A.    No.
 5      Q.    Would you call it a holding
 6      company?
 7                MR. RUBIN:  Objection to form,
 8           lacks foundation.
 9                MR. BACKENROTH:  You are objecting
10           as to form and you are reserving your
11           right to object to trial.  However in
12           the deposition, he must answer the
13           question.  That is what it means
14           because it is federal stipulations.
15      Q.    What is the answer?
16      A.    I want to ask you to define what
17      you mean by that question.
18      Q.    I guess in my mind the holding
19      company is something that doesn't have
20      necessarily a business purpose but is an LLC
21      used for various reasons.  Is that a fair
22      explanation of what Hamilton East Man
23      Capital is?
24      A.    It is not a single purpose entity
25      so the opposite of a single purpose entity
```

```
 1                J. WERTZBERGER
 2           MR. RUBIN:  Objection to form.
 3      A.   We went through each individual
 4   and I took the time to answer them and I
 5   believe I answered them correctly.
 6      Q.   I didn't ask you if you are the
 7   authorized signatory and now I'm asking you
 8   that because that is something you brought
 9   up.
10           MR. RUBIN:  Objection to form.
11        Specify what purpose you are asking?
12           MR. BACKENROTH:  He doesn't have
13        to.
14           MR. RUBIN:  I can object to the
15        form.
16           MR. BACKENROTH:  Reserve your
17        objections to the trial if you want to.
18        That is the federal stips.
19      A.   I believe I have been authorized
20   to sign for Hamilton East Man in the past.
21   I believe I have been authorized to sign on
22   behalf of Elfie in the past.  I believe I
23   was been authorized to sign on behalf of
24   Katersky in the past.  I'm not sure as to
25   Woodmere Funding.
```

```
 1                    J. WERTZBERGER
 2              MR. RUBIN:  Objection to form.
 3         A.    We went through each individual
 4    and I took the time to answer them and I
 5    believe I answered them correctly.
 6         Q.    I didn't ask you if you are the
 7    authorized signatory and now I'm asking you
 8    that because that is something you brought
 9    up.
10              MR. RUBIN:  Objection to form.
11              Specify what purpose you are asking?
12              MR. BACKENROTH:  He doesn't have
13              to.
14              MR. RUBIN:  I can object to the
15              form.
16              MR. BACKENROTH:  Reserve your
17              objections to the trial if you want to.
18              That is the federal stips.
19         A.    I believe I have been authorized
20    to sign for Hamilton East Man in the past.
21    I believe I have been authorized to sign on
22    behalf of Elfie in the past.  I believe I
23    was been authorized to sign on behalf of
24    Katersky in the past.  I'm not sure as to
25    Woodmere Funding.
```

```
 1                     J. WERTZBERGER

 2         go ahead.

 3         Q.    How many computers do you have?

 4               MR. RUBIN:  Objection to form.

 5         A.    I have two computers.

 6         Q.    Where are they located?

 7         A.    At 11 Ocean Parkway, Brooklyn, New

 8    York.

 9         Q.    Have you had those computers since

10    2014?

11         A.    Yes.  Sorry, one of them yes.  One

12    of them no.

13         Q.    How about since 2012, have you had

14    those computers since then?

15               MR. RUBIN:  Objection to form.

16         A.    I'm not sure.

17         Q.    In 2012, do you recall how many

18    computers you had?

19               MR. RUBIN:  Objection to form.

20         A.    No.  For the record,

21    Mr. Goldberger is taking phone calls and

22    disturbing the deposition.

23               MR. BACKENROTH:  For the record,

24          you took an enormous amount of time and

25          I can understand why you didn't want
```

1                    J. WERTZBERGER

2          this video.

3              MR. RUBIN:  Stop it.  That is

4          improper.  We don't need

5          characterizations.  He should shut it

6          off, I agree.  There is one person

7          asking questions.  It is not proper for

8          you to characterize his testimony.  You

9          have not been involved in this case for

10         months, you have not shown up in court,

11         you have not been on any telephone

12         calls, don't know anything about this

13         case, and to insult the client as he is

14         testifying is improper.

15             MR. BACKENROTH:  As I said, you

16         didn't want this video because you

17         didn't want it to appear so it is fine.

18         Everyone reserves their rights.  It was

19         uncalled for your comment that I was

20         going to tell Mr. Goldberger to go

21         outside and he has to make the phone

22         call.

23             MR. RUBIN:  You attacked the

24         witness.

25             MR. BACKENROTH:  You attacked me

1            J. WERTZBERGER

2            The fact of the matter is your attorney

3            has a right to raise an objection, he

4            can preserve that for trial.  It is a

5            question of relevancy under federal

6            stips.  He must answer the question and

7            I'm simply objecting.

8                 MR. RUBIN:  I'm asking for you to

9            present to me a good faith basis why

10           this is a good faith question.

11                MR. BACKENROTH:  We are not

12           required to do that in a deposition.

13           It is our deposition, not yours so we

14           ask the witness to answer the question.

15           Reserve your question for trial.

16                MR. RUBIN:  I ask the witness to

17           testify if there is some business

18           connection with Mr. Rubenstein to the

19           adversary proceeding...

20                MR. BACKENROTH:  No, we want the

21           question posed to him.  Unless you are

22           objecting and directing him not to

23           answer the question, we will have a

24           ruling from the judge.

25                MR. RUBIN:  You are interrupting

```
 1                    J. WERTZBERGER

 2          what I'm saying to the client so let me

 3          say without being interrupted.

 4               MR. BACKENROTH:  Don't change the

 5          question.

 6               MR. RUBIN:  Don't raise your

 7          voice.

 8               MR. BACKENROTH:  I'm not raising

 9          my voice.  This is the way I normally

10          speak.

11               MR. RUBIN:  I spoke with you many

12          times over many years and you are

13          louder than others.

14               MR. BACKENROTH:  I apologize but

15          the point is the same.

16               MR. RUBIN:  There is one person

17          asking questions and this is a tag team

18          that is improper.  We will go to the

19          judge and I'll ask for direction that

20          only one person asks questions.

21               MR. BACKENROTH:  You can ask

22          whatever you want when we go to the

23          judge.

24               MR. RUBIN:  It is appropriate for

25          the client to answer the question if it
```

1                       J. WERTZBERGER

2            relates to the business relationship

3            that he has that relates to the subject

4            matter of this adversary proceeding

5            which is the note and mortgage in

6            foreclosure.  If you are asking about

7            business relationships that you have

8            that are unrelated to this adversarial

9            proceeding, I can understand why he

10           doesn't want to answer the question and

11           you can take it up with the judge if

12           you want to push it.

13              MR. BACKENROTH:  You will direct

14           him not to answer the question that

15           relates to his general business

16           relationship with this individual?

17              MR. RUBIN:  That is not what I

18           said.  He understands what I said and

19           please don't restate it.

20              MR. BACKENROTH:  I heard you very

21           well.  You wanted to change the nature

22           of the question.  We are inquiring

23           concerning the general business

24           relationship between this individual

25           and the person giving the testimony.

```
 1                  J. WERTZBERGER

 2              MR. RUBIN:  You can ask about

 3          general business relationship that is

 4          different than anything specific so you

 5          can ask him in general.

 6              MR. BACKENROTH:  First I'll ask

 7          general and then some specifics.

 8          A.   I again ask Mr. Fleischmann to

 9      speak to me, and if Mr. Backenroth has

10      something to say he should go through

11      Mr. Fleischmann and not yelling because he

12      is overpowering the room.

13              MR. BACKENROTH:  That is not your

14          prerogative and you are not here to

15          give me directions.  You are here to

16          answer questions as a witness.

17              MR. RINGEL:  There should be one

18          questioner.  I haven't said anything.

19          This should be one questioner.  If you

20          want to talk to Jeffrey but you should

21          not address the witness if you are not

22          the questioner.  He can do that if

23          necessary.

24          Q.   What is the answer to my question?

25          A.   He has not served as a business
```

```
 1                    J. WERTZBERGER
 2            MR. FLEISCHMANN:  No, he has not
 3       answered my question.
 4            MR. RUBIN:  Ask your next
 5       question.
 6            MR. FLEISCHMANN:  Mark for a
 7       ruling.
 8            MR. RUBIN:  Since you marked it
 9       for a ruling, he has not explained any
10       good faith basis for asking the
11       question.  I asked him several times
12       and he has refused.  It is modus
13       operandi that is improper.
14            MR. BACKENROTH:  He is not
15       required to do so.
16       Q.   Did you take Mr. Rubenstein's
17  advice in connection with this matter?
18       A.   If he acted in various forms as
19  Counsel to me personally or to my companies,
20  I may have discussed this matter with him.
21       Q.   Do you know if he discussed in his
22  capacity as an attorney or did you discuss
23  in the capacity as a fact witness?
24       A.   I'm not a lawyer.
25       Q.   Your discussions with
```

1                    J. WERTZBERGER

2       Mr. Rubenstein concerning this case, were

3       they in the context of legal advice or

4       something else?

5                    MR. RUBIN:  Objection.  Asked and

6               answered.

7            A.   If I had discussions with

8       Mr. Rubenstein regarding this case, it was

9       not in a social manner.  He is a lawyer and

10      generally when I speak to him I seek his

11      legal advice.

12           Q.   How about in this instance?

13           A.   I don't recall the details of my

14      conversation with Mr. Rubenstein.  Before

15      you proceed with the questions, I want to

16      note for the record Mr. Fleischmann is

17      sometimes taking 30 seconds to ask questions

18      from when I get an answer.

19                    MR. BACKENROTH:  Mr. Fleischmann

20              and I were consulting and if you had a

21              video, it would be very clear that is

22              what happened.

23           Q.   I want to go back to something we

24      discussed before, Fink Family IRR Trust.

25      You mentioned you know the trustee?

```
 1                     J. WERTZBERGER
 2      on me I'll be dead.
 3               MR. RUBIN:  That is what it says
 4          now shut it off.
 5               MR. BACKENROTH:  That is the only
 6          message?
 7          A.   Only message I received from her
 8      today.
 9          Q.   Can you shut your phone off now
10      please?
11          A.   No.
12               MR. RUBIN:  Off the record.
13               (Whereupon, an off-the-record
14          discussion was held.)
15          Q.   Who were the people, other people
16      that you discussed in the context of your
17      diligence?
18          A.   I speak to various individuals
19      that I think would have knowledge of other
20      businesses.  It goes back to 2012.  If I
21      would name you names, it would be more like
22      guessing because I don't have a particular
23      recollection of speaking to anybody though I
24      spoke to a lot of people.
25          Q.   Did these discussions ultimately
```

```
 1                    J. WERTZBERGER

 2    want me to review it for 15 minutes?

 3         Q.    Take your time.

 4              MR. BACKENROTH:   Take your 15

 5         minutes.

 6         A.    The 15 minutes you are giving me

 7    is getting in the seven-hour time slot you

 8    reserved to depose me.

 9         Q.    Take the time you need to answer

10    my question.

11              (It is now 12:33.  Whereupon, a

12    short recess was taken.)

13         A.    Presumably not all the parties

14    here read Hebrew so we are going to read the

15    translation.  Number 17, it doesn't have a

16    page number but has a paragraph number.

17    "Party B is authorized to obtain a mortgage

18    from the bank against the building and

19    assets of the firm both on the firm itself

20    and on the firm's buildings.  Party A which

21    is a defined party (start with the caption)

22    from the memorandum, conditions and manners

23    of the provisions, conditions, and manners

24    of the sale and commitment that were

25    discussed between and negotiated between the
```

1                     J. WERTZBERGER

2       You don't have to read it to me.  Maybe you

3       misunderstood my question.  I want to know

4       if you can point to a paragraph number that

5       references the question I asked.

6               MR. RUBIN:  You are going to the

7          first counterclaim here.

8               MR. FLEISCHMANN:  I'm not, and you

9          are making a speaking objection.

10              MR. RUBIN:  I'm allowed to say.

11              MR. FLEISCHMANN:  You are allowed

12         to make objections but not speaking

13         objections.

14              MR. RUBIN:  You are going far

15         afield from the scope of what is

16         relevant to the adversary proceeding.

17              MR. BACKENROTH:  You are

18         contemplating the document, am I

19         correct?  You are not answering the

20         question.

21         A.    I'm contemplating if I have the

22      mental capacity to study now a 52-page

23      agreement that speaks for itself.

24         Q.    I don't think it is 52 pages.

25         A.    52-bullet point agreement that

                    J. WERTZBERGER

2   and whatever it says, it says.  Correct?

3        A.   Correct.

4        Q.   Did there come a time after you

5   signed this document...

6             MR. RUBIN:  For the record, you

7        spent 40 minutes to reach that

8        conclusion.

9             MR. BACKENROTH:  He spent 40

10       minutes to get an answer from the

11       witness and...

12            MR. RUBIN:  Multiple times, he

13       gave the answer multiple times.

14            MR. BACKENROTH:  The record speaks

15       for itself so you make those comments,

16       I don't respond.

17            MR. RUBIN:  There will be an issue

18       going over seven hours and he has

19       intention to answer a lot of questions

20       and this is wasting time.

21       A.   I want both lawyers to keep the

22   voices down because I want to testify in a

23   calm fashion.

24       Q.   Did you execute this agreement?

25       A.   Yes.

1                        J. WERTZBERGER

2                        (Whereupon, an off-the-record

3                        discussion was held.  Also, a lunch

4                        break was taken.  Whereupon, a short

5                        recess was taken.)

6                 Q.    What is Broadway Equity Holdings,

7        L LC?

8                        MR. RUBIN:  Objection to form.

9                 A.    Limited liability company formed

10       under the laws of the State of New York.

11       Just want to clarify two things before you

12       proceed with the questioning.

13                       MR. BACKENROTH:  There is no

14                       question pending and the rules of

15                       engagement is you respond to questions.

16                       You don't make your own statements.

17                       Your Counsel can ask you in cross

18                       examination if he wants to ask you

19                       something afterwards to clarify

20                       something is fine.  Right now, we are

21                       trying to get our deposition.

22                Q.    Do you know who formed Broadway

23       Equity Holdings LLC?

24                A.    You mean like incorporated for the

25       state?  Judy Minster.

DIAMOND REPORTING 877-624-3287 info@diamondreporting.com

1                    J. WERTZBERGER

2          A.   No.

3          Q.   Do you recall asking Mr. Menczer

4    if he signed the mortgage at the closing?

5          A.   I just want to answer the previous

6    question.

7               MR. BACKENROTH:  Excuse me, there

8               is no question pending.  On cross

9               examination, your attorney can try to

10              clean up whatever you said but right

11              now this is not appropriate.

12              MR. RUBIN:  What is he saying?

13              MR. BACKENROTH:  He wanted to

14              volunteer some sort of an answer.

15              MR. RINGEL:  He wanted to complete

16              his answer.

17              MR. BACKENROTH:  No, he wanted to

18              talk about a previous thing.

19              MR. RINGEL:  I thought Mr.

20              Fleischmann was doing it?

21              MR. BACKENROTH:  It doesn't make

22              any difference.

23              MR. RINGEL:  It does.  You don't

24              need two lawyers to do one deposition.

25              MR. BACKENROTH:  This man wants to

1                    J. WERTZBERGER

2           volunteer things on the record that is

3           not appropriate.

4                MR. RUBIN:  He wants to answer

5           questions, that is what he is here for.

6                MR. BACKENROTH:  There was no

7           question pending and, if you want, read

8           it back.

9           A.    I would ask Mr. Backenroth not to

10    speak to me during the testimony.  If he

11    wants, he can direct Mr. Fleischmann and ask

12    him questions to answer.

13               MR. BACKENROTH:  I was directing

14          my comment to opposing Counsel.  You

15          are here as a witness.  If you think

16          there was a question pending, read it

17          back and see what the question is

18          pending.

19          A.    I want to clarify...

20               MR. BACKENROTH:  That is what we

21          are objecting to.  While Counsel is

22          going through the papers for his next

23          question, this is not an opportunity

24          for him to volunteer what it is he

25          wants on the record.

```
 1                  J. WERTZBERGER
 2            MR. RUBIN:  Let's see what he
 3       wants.
 4            MR. BACKENROTH:  No, that is not
 5       an appropriate procedure and the reason
 6       I raised it is, because as Counsel is
 7       preparing to do the next question, it
 8       is not an appropriate moment for him to
 9       volunteer what he wishes or I wouldn't
10       say anything.  The objection is
11       pending, there is no question pending,
12       and he shouldn't be answering any
13       questions period.  On cross
14       examination, you can put anything you
15       want.
16            MR. RUBIN:  What did you say?
17            THE WITNESS:  I want to clarify
18       the question that was asked and I was
19       in the middle of answering.
20       A.   I was asked if I can explain the
21  difference why one has two signatories, and
22  the document and note has two signatories,
23  and the note has one signatory.  The
24  document quite clearly explains it because
25  the note is a promissory note by Blue
```

1                    J. WERTZBERGER

2        Beverage Inc. and 152 Broadway Haverstraw NY

3        LLC while the property is owned by the

4        mortgagor 152 Broadway Haverstraw New York,

5        LLC.  Therefore, only the signature line is

6        for that individual.  Did that answer your

7        question?

8            Q.   No.

9                 MR. RUBIN:  I think it answers it

10               very clearly.  Mr. Backenroth should

11               withhold his comments going further.

12                 MR. FLEISCHMANN:  So should you.

13                 MR. RUBIN:  No.  My client wanted

14               to speak, he was actually going to

15               answer and I had no idea what he was

16               going to say.  It was right on point,

17               Counselor, so stop it.

18                 MR. BACKENROTH:  What was pending

19               had nothing to do with pending and he

20               seized the moment when Counsel was busy

21               preparing for his next question to

22               volunteer something on a previous

23               question, not a question pending.  If

24               you don't think that is correct, we can

25               go back and read back the record.

```
 1              J. WERTZBERGER

 2              MR. RUBIN:  He doesn't know what

 3         questions are coming and he saw the

 4         answer and he gave it.

 5              MR. BACKENROTH:  He wanted to

 6         correct a previous answer given on a

 7         previous question, not a question

 8         pending in front of this deposition.

 9              MR. RUBIN:  He can clarify while

10         he sits there two seconds later.

11              MR. BACKENROTH:  There was another

12         question pending and concluded, and now

13         he - there was no question pending and

14         that was the point.  Therefore, the

15         proper procedure is not to do that.

16              MR. RUBIN:  You are wasting time.

17         A.   My point is that he asked the

18    question, I said I don't know the answer.

19    While he was shuffling through his

20    documents, I realized the answer and I'm

21    completing my answer.  This guy is making

22    noise and I'm not listening to him.  I'm

23    answering Mr. Fleischmann and not answering

24    the other person.

25              MR. BACKENROTH:  So does your
```

1                    J. WERTZBERGER

2      we have the recording of the entire closing?

3          A.    That is assuming it only recorded

4      those parts, maybe more.  I'll check.

5              MR. FLEISCHMANN:  Please do.

6              MR. RUBIN:  You are misstating the

7          testimony.

8              MR. FLEISCHMANN:  That was his

9          answer.

10             MR. RUBIN:  No, it was not his

11         answer.  He didn't say he was recording

12         all day phone calls.

13             MR. FLEISCHMANN:  Excuse me, you

14         are now testifying.

15             MR. BACKENROTH:  You object when

16         someone responds to you.

17         A.    He misstated the testimony.

18             MR. BACKENROTH:  The man clearly

19         stated he had the thing running all day

20         long and therefore but mysteriously the

21         portion that has to do with the consent

22         is not on the recording.

23             MR. RUBIN:  Why did he record?

24             MR. BACKENROTH:  Because he

25         testified beforehand there was this

```
 1              J. WERTZBERGER

 2        dialogue with Mr. Feerst where he is

 3        telling him he is about to record.

 4             MR. RUBIN:  He said he is going to

 5        record.

 6             MR. BACKENROTH:  That is not there

 7        in the recording.  It is excuse me.

 8        You want to clean up the record.

 9             MR. RUBIN:  I don't want to clean

10        up the record.

11             MR. BACKENROTH:  Then you will get

12        a response if you want to do that.  If

13        you don't do that, you will not get a

14        response.

15             MR. RUBIN:  He misstated the

16        record.

17        A.   He misstated the record but we

18   will help him keep it straight this time,

19   you understand?

20             MR. BACKENROTH:  He got it very

21        straight and the record is very clear.

22        A.   It is very clear the app records

23   phone calls.  You are not technologically

24   savey but it is very clear to those that

25   know how the app works how it happened.
```

```
 1                    J. WERTZBERGER
 2              MR. BACKENROTH:  You want to check
 3          if it recorded anything else.  You did
 4          record other things besides the
 5          conversation?
 6          A.   I'm not answering your
 7      questioning.
 8              MR. RUBIN:  If he has a recording
 9          that relates to this matter, we turn it
10          over.  If he has a recording what he
11          talks about dinner with his wife, we
12          don't turn that over.
13              MR. BACKENROTH:  Whether a
14          telephone conversation or whether he
15          was simply recording.
16              MR. RUBIN:  It has nothing to do
17          with this closing.
18              MR. FLEISCHMANN:  It does.
19              MR. RUBIN:  It will tell you what?
20              MR. FLEISCHMANN:  Whether he is
21          lying about recording everything.
22              MR. RUBIN:  He is not saying he is
23          recording everything.
24              MR. BACKENROTH:  He said he
25          recorded everything.
```

```
 1                    J. WERTZBERGER
 2              MR. RUBIN:  You are misstating his
 3         testimony and he is going to check the
 4         app.
 5              MR. BACKENROTH:  We will find out
 6         whether or not other things were
 7         recorded besides the phone
 8         conversation.
 9         A.   I know you are very frustrated.
10              MR. BACKENROTH:  I'm not
11         frustrated, I'm perfectly calm.
12         A.   No reason to argue.  I also would
13    be frustrated if I were you guys.
14              MR. BACKENROTH:  You can
15         characterize any way you want.  It is
16         only when your Counsel tries to save
17         you from your testimony that we now
18         have this problem.  Whenever you open
19         up your mouth, it is because you want
20         to clear up something.  You can't do
21         that, the record is clear.
22         A.   In your mind, you don't understand
23    how apps and phone work.  You think things
24    were clarified.  The younger generation
25    understands that nothing was clarified.
```

```
 1                    J. WERTZBERGER

 2              MR. RUBIN:  You want to ask the

 3         questions instead of him?

 4              MR. BACKENROTH:  If you don't

 5         interrupt, it will be fine.  If you

 6         want to testify on your own and then

 7         you get offended when I respond, I'm

 8         sorry.  Don't do that.  You have a

 9         right to raise an objection as to form

10         if that is what you want to do.

11              MR. RUBIN:  I object to when he

12         misstates the testimony.

13              MR. RINGEL:  When he is objecting

14         to his question, you shouldn't be

15         responding.  I'm not doing that and for

16         a reason.

17              MR. BACKENROTH:  He has on

18         numerous occasions has volunteered his

19         testimony as to what the witness said

20         or the time changes.

21              MR. RUBIN:  I always spoke up when

22         he misstated the testimony and it

23         happened a couple of times.

24              MR. BACKENROTH:  The record is

25         very clear on it and anyone that reads
```

```
 1                  J. WERTZBERGER
 2      don't recall.  On the spot, I didn't
 3      prepare.
 4           Q.   Do you recall anything as you sit
 5      here today?
 6                MR. RUBIN:  He just testified he
 7           don't recall.  Then you asked him does
 8           he recall.
 9                MR. BACKENROTH:  You wish to get a
10           response and then you get upset when I
11           respond.
12           A.   I would love it when you have
13      smart things to say to say it calmly because
14      I'm trying to testify accurately and to the
15      point.  Keep it calm, laugh, all okay but
16      don't yell.  I can't handle it.  You don't
17      want me to get up and say I can't testify so
18      please work with me.  Thank you.
19                MR. FLEISCHMANN:  Put a blank line
20           in the transcript for him to fill in
21           the answer to the question.
22      _____
23           A.   How I didn't close the property
24      and take title insurance example is what you
25      want?
```

```
 1              J. WERTZBERGER
 2              MR. RUBIN:  Objection to form.  He
 3         is misstating the testimony.  You can
 4         answer.
 5         A.   I ask you to read my testimony as
 6    it relates to this question.
 7              MR. BACKENROTH:  You think that is
 8         appropriate having a conversation with
 9         your client with a question pending?  I
10         know you take a very moral position.
11              MR. RUBIN:  I said to him say
12         again, I want to move on.  It is after
13         6.
14              MR. BACKENROTH:  That was quite a
15         conversation that took place over
16         there.  Off the record.
17              (Whereupon, an off-the-record
18         discussion was held.)
19         A.   There was no discussion that money
20    that I owe him will not be paid if he is not
21    going to give the affidavit.
22         Q.   Didn't you testify that, if you
23    want me to do what I'm supposed to do, you
24    have to do what you are supposed to do?
25              MR. RUBIN:  Objection.  Misstates
```

1                    J. WERTZBERGER

2          A.   I don't think I had an interest in

3    that company, I'm not sure.  I was referring

4    to a different action.

5          Q.   What was the name of that action?

6          A.   It was a multitude of actions

7    related to an individual Sam Sprei.

8          Q.   Do you recall the name of the

9    action?

10         A.   No.

11         Q.   In the Mayor Rosen action, do you

12   know who retained Gail Pollack or her firm?

13         A.   I will not testify to that action,

14   it is not relevant to this action.

15              MR. BACKENROTH:  Really.

16         Unbelievable.

17              MR. RINGEL:  Is that called for?

18         You can think it but don't verbalize

19         it.

20              MR. FLEISCHMANN:  Mark for a

21         ruling.

22         Q.   Do you know what Khaltoras and

23   Chaim of Rockland.  Do you know what that

24   is?

25         A.   It is a big community that refers

**Fred B. Ringel**

| | |
|---|---|
| **From:** | Jeffrey Fleischmann <jf@lawjf.com> |
| **Sent:** | Monday, April 01, 2019 2:26 PM |
| **To:** | Fred B. Ringel |
| **Cc:** | Paul Rubin; abackenroth@bfklaw.com |
| **Subject:** | Re: Tuesday |

We aren't starting without Abe. If you scheduled a a conference call at noon in spite of our meeting, then let's just start at 1 or do it a different day.

On Apr 1, 2019, at 1:42 PM, Fred B. Ringel <fbr@robinsonbrog.com> wrote:

Jeff/Paul,

A few minutes ago we got our systems back up and running so we can start tomorrow at 10 with Jeff's documents and then we will do our documents when Abe arrives. I just wanted to let you know I have to take a break from noon to 1 pm, presumably when you will want to take lunch anyway, for a conference call I was unable to rearrange.

See you tomorrow at 10.

Fred

=========================================
Fred B. Ringel
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Phone: 212-603-6300
Fax: 212-956-2164

Confidentiality Notice: The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above.  If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited.  If you have received this communication in error, please notify Robinson Brog Leinwand Greene Genovese & Gluck P.C. (212) 603-6300 and purge the communication immediately without making any copy or distribution.

.

Exhibit D

**Fred B. Ringel**

| | |
|---|---|
| **From:** | Jeffrey Fleischmann <jf@lawjf.com> |
| **Sent:** | Monday, April 01, 2019 2:26 PM |
| **To:** | Fred B. Ringel |
| **Cc:** | Paul Rubin; abackenroth@bfklaw.com |
| **Subject:** | Re: Tuesday |

We aren't starting without Abe. If you scheduled a a conference call at noon in spite of our meeting, then let's just start at 1 or do it a different day.

On Apr 1, 2019, at 1:42 PM, Fred B. Ringel <fbr@robinsonbrog.com> wrote:

Jeff/Paul,

A few minutes ago we got our systems back up and running so we can start tomorrow at 10 with Jeff's documents and then we will do our documents when Abe arrives. I just wanted to let you know I have to take a break from noon to 1 pm, presumably when you will want to take lunch anyway, for a conference call I was unable to rearrange.

See you tomorrow at 10.

Fred

==========================================
Fred B. Ringel
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Phone: 212-603-6300
Fax: 212-956-2164

Confidentiality Notice: The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above.  If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited.  If you have received this communication in error, please notify Robinson Brog Leinwand Greene Genovese & Gluck P.C. (212) 603-6300 and purge the communication immediately without making any copy or distribution.

.

Exhibit E

Paul Piperato, County Clerk
9 South Main St., Ste 100
New City, NY  10956
(845) 638-5070

# Rockland County Clerk Recording Cover Sheet

**Received From :**
IMPERIAL ABSTRACT CORP
367 ROUTE 306
MONSEY, NY  10952

**Return To :**
IMPERIAL ABSTRACT CORP
367 ROUTE 306
MONSEY, NY  10952

**Method Returned :** ERECORDING

**First GRANTOR**

152 HAVERSTRAW HOLDCO LLC

**First GRANTEE**

152 BROADWAY HAVERSTRAW NY LLC

**Index Type :** Land Records
**Instr Number :** 2019-00011018
**Book :**                    **Page :**

**Type of Instrument :** Deed
**Type of Transaction :** Deed Other
**Recording Fee:**              $331.00

**Recording Pages :**                8

The Property affected by this instrument is situated in Haverstraw, in the County of Rockland, New York

| Real Estate Transfer Tax | |
|---|---|
| **RETT # :** | 5102 |
| **Deed Amount :** | $0.00 |
| **RETT Amount :** | $0.00 |
| | |
| **Total Fees :** | $331.00 |

State of New York

County of Rockland

I hereby certify that the within and foregoing was recorded in the Clerk's office for Rockland County, New York

On (Recorded Date) : 04/19/2019

At (Recorded Time) : 12:54:00 PM

Paul Piperato, County Clerk

## QUITCLAIM DEED (INDIVIDUAL OR CORPORATION)

CAUTION: THIS AGREEMENT SHOULD BE PREPARED BY AN ATTORNEY AND REVIEWED BY ATTORNEYS FOR
SELLER AND PURCHASER BEFORE SIGNING.

*THIS INDENTURE,* made the 25th day of **March, 2019,  between**

**152 HAVERSTRAW HOLDCO LLC, a Delaware Limited Liability Company,** utilizing an address for the business as 152 Broadway, Haverstraw, New York 10927,  party of the first part, and

**152 BROADWAY HAVERSTRAW NY LLC,  a New York Limited Liability Company,** utilizing an address for the business as 152 Broadway, Haverstraw, New York 10927, party of the second part,

*WITNESSETH,* that the party of the first part, in consideration of Ten and No/100 dollars, lawful money of the United States, paid by the party of the second part, does hereby remise, release and quitclaim unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

*ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND*, with the buildings and improvements thereon erected, situate, lying and being in the **Village and Town of Haverstraw, County of Rockland, State of New York**, being more particularly bounded and described **on Schedule A annexed hereto and made a part hereof.**

*BEING THE SAME PREMISES* conveyed by deed dated the 6th  day of April, 2017 between **152 BROADWAY HAVERSTRAW NY LLC to 152 HAVERSTRAW HOLDCO LLC** which deed was duly recorded in the Rockland  County Clerk's Office on the 15th day of May, 2017 under Instrument No.: 2017-00015627.

*TOGETHER* with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof,

*TOGETHER* with the appurtenances and all the estate and rights of the party of the first part in and to said premises,

*TO HAVE AND TO HOLD* the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

*THIS  DEED* is prepared without the benefit of a title search and preparer disclaims any responsibility for any matters affecting title to the property which might be disclosed by a full and accurate title search.

*AND* the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the

costs of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

*IN WITNESS WHEREOF,* the party of the first part has duly executed this deed the day and year first above written.

152 HAVERSTRAW HOLDCO LLC

By: _____

JOSEPH GOLDBERGER, Member

Acknowledgment by a Person Within New York State (RPL § 309-a)

STATE OF NEW YORK          )
COUNTY OF Orange           ) ss.:
                           )

On the 26 day of March, 2019, before me, the undersigned, personally appeared **JOSEPH GOLDBERGER,** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

> ARON GOLDBERGER
> Notary Public - State of New York
> No. 01GO6186459
> Qualified in Rockland County
> My Comm. Expires Apr. 28, 2020

# SCHEDULE  A
## PROPERTY DESCRIPTION

*ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND*, situate, lying and being in the Village and Town of Haverstraw, County of Rockland and State of New York, being more particularly bounded and described as follows:

BEGINNING at a point on the northerly right of way line of Broadway, said point being located at the southwest corner of lands now or formerly Olori & Neuser (Tax Lot 27.37-1-1) and the southeast corner the hereinafter intended to be described parcel;

RUNNING THENCE along said northerly right of way line of Broadway the following four courses and distances:

North 69 degrees 24 feet, 21 inches west 238.65 feet;
North 39 degrees 15 feet, 02 inches west, 164.13 feet;
On a curve to the left having a radius of 220.02 feet, an arc length of 111.55 feet;
North 68 degrees 17 feet 54 inches west, 102.91 feet;

RUNNING THENCE along the easterly, northerly and westerly line of lands now or formerly of Scaglione (Tax Lots 26.36-1-29, 26.36-1-28, 26.36-1-27 and 26.36-1-26) the following nine courses and distances:

North 22 degrees 15 feet 20 inches east, 60.47 feet.
North 34 degrees 51 feet 20 inches west, 51.20 feet.
North 72 degrees 20 feet 36 inches west, 37.20 feet
North 79 degrees 00 feet 46 inches west, 43.58 feet.
South 79 degrees 15 feet 55 inches west, 7.50 feet.
North 07 degrees 41 feet 45 inches east 34.96 feet.
South 70 degrees 20 feet 46 inches west, 49.01 feet.
North 77 degrees 29 feet 21 inches west, 98.06 feet.
South 03 degrees 07 feet 57 inches west, 85.30 feet.

RUNNING THENCE along the easterly right of way line of Samsondale Avenue the following eleven courses and distances:

North 54 degrees 53 feet 21 inches west, 28.99 feet.
North 48 degrees 20 feet 24 inches west, 22.19 feet.
North 48 degrees 22 feet 52 inches east, 4.88 feet;
North 48 degrees 37 feet 06 inches west, 56.75 feet;
North 40 degrees 01 feet 28 inches west, 76.44 feet;
North 23 degrees 12 feet 29 inches west 60.89 feet;
South 64 degrees 21 feet 20 inches west, 4.27 feet;
North 12 degrees 42 feet 14 inches west, 93.33 feet;
North 79 degrees 51 feet 04 inches east, 2.85 feet;
North 13 degrees 32 feet 09 inches west, 15.71 feet;
North 08 degrees 09 feet 17 inches west, 63.70 feet;

RUNNING THENCE along the lands or formerly of Orange & Rockland Utilities, Inc. (Tax Lot 26.08-2-39 and 27.05-1-2) the following seven courses and distances:

continued -

# SCHEDULE A - CONTINUED
## PROPERTY DESCRIPTION

On a curve to the left having a radius of 450.00 feet, an arc length of 96.62 feet;
North 77 degrees 50 feet 21 inches east 566.39 feet;
On a curve to the right having a radius of 360.00 feet, an arc length of 180.31 feet;
South 73 degrees 27 feet 49 inches east 57.01 feet;
On a curve to the left having a radius of 300.00 feet, an arc length of 122.94 feet;
North 83 degrees 03 feet 21 inches east, 43.33 feet;
North 82 degrees 54 feet 51 inches east 211.86 feet;

RUNNING THENCE along the westerly and southerly line of Lot 2 the following ten (10) courses and distances:
South 08 degrees 35 feet 10 inches east, 199.63 feet;
On a non-tangent curve to the right having a radius of 188.00 feet, an arc length of 162.23 feet with a chord bearing and distance of south 04 degrees 11 feet 55 inches west, 157.24 feet;
South 61 degrees 05 feet 00 inches east, 20.22 feet;
South 49 degrees 06 feet 00 inches west, 14.29 feet;
South 40 degrees 54 feet 00 inches east, 157.39 feet;
North 48 degrees 49 feet 05 inches east 42.52 feet;
North 09 degrees 49 feet 05 inches west, 105.55 feet;
North 37 degrees 24 feet 10 inches east, 107.00 feet;
North 81 degrees 22 feet 05 inches east, 113.29 feet;
North 16 degrees 38 feet 10 inches, east 143.53 feet;

RUNNING THENCE along the line of other lands now or formerly of Orange & Rockland Utilities, Inc. (Tax Lot 27.05-2-6) the following five (5) courses and distances:

1. South 45 degrees 00 feet 00 inches east, 161.00 feet;
2. South 44 degrees 24 feet 40 inches west, 38.06 feet;
3. South 07 degrees 57 feet 20 inches east, 58.25 feet;
4. South 40 degrees 00 feet 56 inches east, 274.25 feet;
5. South 39 degrees 25 feet 35 inches west, 197.29 feet;

RUNNING THENCE along the northerly line of land now or formerly of the Village of Haverstraw (Tax Lot 27.37-1-32, 27.37-1-31, 27.37-1-30, 27.37-1-29, 27.37-1-28, 27.37-1-27 and 27.37-1-26) and the northerly line of lands now or formerly of Tor Avenue Realty Corp. (Tax Lot 27.37-1-4) the following two (2) courses and distances:

1. South 88 degrees 01 foot 30 inches west, 248.91 feet;
2. North 72 degrees 53 feet 00 inches west, 331.29 feet,

RUNNING THENCE along the westerly line of lands now or formerly of Tor Avenue Realty Corp. (Tax Lot 27.37-1-4) and Olori and Neuser (Tax Lot 27.37-1-1) the following three (3) courses and distances:

1. South 24 degrees 17 feet 07 inches west, 387.42 feet;
2. North 65 degrees 42 feet 53 inches west, 6.00 feet;
3. South 24 degrees 17 feet 07 inches west, 49.04 feet to the point or place of BEGINNING.

continued -

# SCHEDULE  A - CONTINUED
## PROPERTY  DESCRIPTION

CONSISTING of 924,693 square feet of land.

TOGETHER with an easement for ingress and egress over lands now or formerly of Orange & Rockland Utilities, Inc. (Tax Lots 26.08-2-39, 27.05-1-2- 27.05- 2-6) as recited in Liber 946, Page 960.

Subject to the following easements:

A. Right of way granted to Orange & Rockland Utilities, Inc. and New York Telephone Company as recited in Liber 1001, Page 329.

B. Sanitary Sewer Easement to the Joint Regional Sewerage Board as recited in Liber 982, Page 967.

C. Easement to the Village of Haverstraw dated August 19, 1968.

Also, subject to a proposed utility easement to Admirals Cove Haverstraw, LLC (Tax Lot 27.05-2- 1.1) further bounded and described as follows:

BEGINNING at a point on the northerly right of way line of Broadway said point being distant North 69 degrees 24 feet 21 inches west, 163.48 feet as measured in a northwesterly direction along said northerly right of way line of Broadway, from a point on said northerly right of way line of Broadway located at the southwest corner of lands now or formerly of Olori & Neuser (Tax Lot 27.37- 1-1);

RUNNING THENCE North 69 degrees 24 feet 21 inches west, 22.76 feet along said northerly right of way line of Broadway;

RUNNING THENCE thru Lot 1 the following five (5) courses and distances:

1. North 49 degrees 06 feet 00 inches east, 226.14 feet;
2. North 40 degrees 54 feet 00 inches west, 15.00 feet;
3. North 49 degrees 06 feet 00 inches east, 405.00 feet;
4. North 40 degrees 54 feet 00 inches west, 5.00 feet;
5. North 49 degrees 06 feet 00 inches east, 93.91 feet,

RUNNING THENCE along the westerly line of Lot 2 the following three (3) courses and distances:

1. On a non-tangent curve to the right having a radius of 188.00 feet, an arc length of 46.09 feet, with a chord bearing and distance of South 21 degrees 53 feet 47 inches west, 45.97 feet;
2. South 61 degrees 05 feet 00 inches east, 20.22 feet;
3. South 49 degrees 06 feet 00 inches west, 14.29 feet;

THENCE South 49 degrees 06 feet 00 inches west, 665.99 feet thru Lot 1 to the point or place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 1 in Block 2 on the Rockland County Tax Map.

Said premises is known as:  152 Broadway, Haverstraw, NY

*QUITCLAIM DEED*

| | |
|---|---|
| **152 HAVERSTRAW HOLDCO LLC, a Delaware Limited Liability Company** | Section 27.05<br>Block 2<br>Lot 1<br>Rockland County, Town and Village of Haverstraw |
| To<br>**152 BROADWAY HAVERSTRAW NY LLC, a New York Limited Liability Company** | Street Address: 152 Broadway, Haverstraw, New York 10927 |

**Return By Mail To:**

RONALD J. COHEN, ESQ./SMY - FILE NO.: 19076
Cohen, LaBarbera & Landrigan, LLP
ATTENTION: Sammy Yeoman, Paralegal Supervisor
99 Brookside Avenue
Chester, New York 10918
Telephone: (845) 291-1900

INSTRUCTIONS(RP-5217-PDF-INS): www.orps.state.ny.us

| FOR COUNTY USE ONLY | |
|---|---|
| C1. SWIS Code | 392201 |
| C2. Date Deed Recorded | 4/19/2019 Month Day Year |
| C3. Book | 2019 | C4. Page | 11018 |

**New York State Department of**
**Taxation and Finance**

Office of Real Property Tax Services

**RP- 5217-PDF**

Real Property Transfer Report (8/10)

## PROPERTY INFORMATION

1. Property Location
   152 *STREET NUMBER   Broadway *STREET NAME
   Town of Haverstraw *CITY OR TOWN   Village of Haverstraw VILLAGE   10927 *ZIP CODE

2. Buyer Name
   152 BROADWAY HAVERSTRAW *LAST NAME/COMPANY   NY LLC FIRST NAME
   LAST NAME/COMPANY   FIRST NAME

3. Tax Billing Address
   Indicate where future Tax Bills are to be sent if other than buyer address(at bottom of form)   LAST NAME/COMPANY   FIRST NAME
   STREET NUMBER AND NAME   CITY OR TOWN   STATE   ZIP CODE

4. Indicate the number of Assessment Roll parcels transferred on the deed   1 # of Parcels   OR   ☐ Part of a Parcel

(Only if Part of a Parcel) Check as they apply:
4A. Planning Board with Subdivision Authority Exists   ☐
4B. Subdivision Approval was Required for Transfer   ☐
4C. Parcel Approved for Subdivision with Map Provided   ☐

5. Deed Property Size
   *FRONT FEET   X   *DEPTH   OR   21.55 *ACRES

6. Seller Name
   152 HAVERSTRAW HOLDCO LLC *LAST NAME/COMPANY   FIRST NAME
   LAST NAME/COMPANY   FIRST NAME

*7. Select the description which most accurately describes the use of the property at the time of sale;
J. Industrial

Check the boxes below as they apply:
8. Ownership Type is Condominium   ☐
9. New Construction on a Vacant Land   ☐
10A. Property Located within an Agricultural District   ☐
10B. Buyer received a disclosure notice indicating that the property is in an Agricultural District   ☐

## SALE INFORMATION

11. Sale Contract Date   3/25/2019

*12. Date of Sale/Transfer   03/25/2019

*13. Full Sale Price   0 .00
( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

14. Indicate the value of personal property included in the sale   0 .00

15. Check one or more of these conditions as applicable to transfer:
☐ A. Sale Between Relatives or Former Relatives
☐ B. Sale between Related Companies or Partners in Business.
☐ C. One of the Buyers is also a Seller
☐ D. Buyer or Seller is Government Agency or Lending Institution
☐ E. Deed Type not Warranty or Bargain and Sale (Specify Below)
☐ F. Sale of Fractional or Less than Fee Interest (Specify Below)
☐ G. Significant Change in Property Between Taxable Status and Sale Dates
☐ H. Sale of Business is Included in Sale Price
☐ I. Other Unusual Factors Affecting Sale Price (Specify Below)
☐ J. None
*Comment(s) on Condition:
Asset Protection/Tax Planning, zero consideration

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

16. Year of Assessment Roll from which information taken(YY)   18   *17. Total Assessed Value   4,526,300

*18. Property Class   710   _ _   *19. School District Name   North Rockland CSD

*20. Tax Map Identifier(s)/Roll Identifier(s) (If more than four, attach sheet with additional Identifier(s))
392201  27.05 - 2 - 1

## CERTIFICATION

I Certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein subject me to the provisions of the penal law relative to the making and filing of false instruments.

**SELLER SIGNATURE**

_____ 3/25/19
SELLER SIGNATURE   DATE

**BUYER SIGNATURE**

_____ 3/25/19
BUYER SIGNATURE   DATE

**BUYER CONTACT INFORMATION**

(Enter information for the buyer. Note: If buyer is LLC, society, association, corporation, joint stock company, estate or entity that is not an individual agent or fiduciary, then a name and contact information of an individual/responsible party who can answer questions regarding the transfer must be entered. Type or print clearly.)

GOLDBERGER *LAST NAME   JOSEPH FIRST NAME

( ) *AREA CODE   TELEPHONE NUMBER (Ex: 9999999)

152 *STREET NUMBER   Broadway *STREET NAME

Haverstraw *CITY OR TOWN   NY *STATE   10927 *ZIP CODE

**BUYER'S ATTORNEY**

COHEN, ESQ. LAST NAME   RONALD J FIRST NAME

(845) AREA CODE   291-1900 TELEPHONE NUMBER (Ex: 9999999)

Exhibit F

# EXHIBIT C

18038/2014 Judgment

Page 1 of 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Index No.
Address of Plaintiff: *18038-14*

479 BEDFORD AVENUE
BROOKLYN, NY 11205

RYVKIE GOLDBERGER

                                   Plaintiff(s)

                against

BLUE BEVERAGE GROUP INC. and
152 BROADWAY HAVERSTRAW NY LLC

                                   Defendant(s)

JUDGMENT BY
CONFESSION

| | |
|---|---|
| Amount Confessed | $ 6,098,000.20 |
| Interest | 0 |
| | $ 6,098,000.20 |
| Costs by Statute | $ |
| Transcript | |
| Fees on Execution | |
| Satisfaction | |
| Filing Fee | 210.00 |
| Total (costs and disbursements) $ | 210.00 |
| Total $ | 6,098,210.20 |

ATTORNEY'S AFFIRMATION

STATE OF NEW YORK, COUNTY OF KINGS
    The undersigned, attorney at law of the State of New York, affirms that    he is

attorney(s) for the plaintiff    attorney(s) for the plaintiff herein and states that the disbursements above specified are
correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms
this statement to be true under the penalties of perjury.

Dated: December 30, 2014

Print Name Beneath Signature
BARRY R. FEERST

    JUDGMENT entered the 30th        day of December 2014
    On filing the foregoing affidavit of Confession of Judgment made by the defendants        herein, sworn to the
        day of
    NOW, ON MOTION OF BARRY R. FEERST
attorney(s) for plaintiff    it is
    ADJUDGED that RYVKIE GOLDBERGER

                                                                        plaintiff(s),

residing at 479 BEDFORD AVENUE BROOKLYN, NY 11205
do recover of BLUE BEVERAGE GROUP INC. and 152 BROADWAY HAVERSTRAW NY LLC

                                                                        defendant(s),

residing at 248 FLUSHING AVE, BROOKLYN, NY 11205
the sum of $ 6,098,000.20 with interest of $        0 making a total of $    6,098,000.20
together with $    210.00 costs and disbursements, amounting in all to the sum of $    6,098,210.20
and that plaintiff    have execution thereof.

                                                                        Clerk

| Index No. | COURT | COUNTY OF |
|---|---|---|

Affidavit and Judgment by Confession

NANCY T. SUNSHINE
Clerk

KINGS COUNTY CLERK

against

2014 DEC 30 PM 3: 56

FILED

Attorney(s) for

Office and Post Office Address

Defendant(s)

EXHIBIT
12-11-18
Ryvkie

Printed: 12/5/2018

18038/2014 Judgment

Page 2 of 6



245 — Confession of Judgment. Ind. or Corp. Blank Court

OK

Blumberg Excelsior, Publisher, NYC 10013
www.blumberg.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Index No. 18038/14

RYVKIE GOLDBERGER

*Plaintiff(s)*

against

BLUE BEVERAGE GROUP INC. and
152 BROADWAY HAVERSTRAW NY LLC

*Defendant(s)*

**AFFIDAVIT OF
CONFESSION OF
JUDGMENT**

STATE OF NEW YORK, COUNTY OF KINGS                          ss.:

JOSEPH GOLDBERGER                     being duly sworn, deposes and says: that deponent is

† (the PRINCIPAL OF     BLUE BEVERAGE GROUP INC.152 & BROADWAY HAVERSTRAW NY LLC
the defendant               corporations and is duly authorized to make this affidavit on behalf of the corporate)
defendants herein as well as the individual defendant named above.

The defendants hereby confess judgment herein and authorize entry thereof against defendants in the sum of
$         6,098,000.20
Defendants reside at 248 FLUSHING AVE, BROOKLYN, NY 11205
in the County of KINGS               State of NEW YORK                . Defendants authorize entry
of judgment in ANY
County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly*                    due to the plaintiff arising from
the following facts:

THIS AFFIDAVIT REFLECTS THE PAYMENTS DUE FROM THE DEFENDANTS TO THE PLAINTIFF
PURSUANT TO DEMAND LOANS MADE BY PLAINTIFF TO DEFENDANTS AS EVIDENCED BY THE
PROMISSORY NOTE AND PRINTOUT OF LOANS AND ADVANCES MADE BY PLAINTIFF TO
DEFENDANTS WHICH IS ATTACHED HERETO AND INCORPORATED BY REFERENCE.

This affidavit if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use
other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more
installments, was executed subsequent to the time a default occurred in the payment of an installment thereunder.

Sworn to before me this
30    day of DECEMBER, 2014

Aron Goldberger
Notary Public - State of New York
No. 01GO6186420
Qualified in Kings County
My Commission Expires April 28, 2018

† Strike out matter in parenthesis if defendant is individual.
* Insert words "to become" if debt is not yet due.
*# If in a city court, insert name of court, UCCA §1403.

BLUE BEVERAGE GROUP INC        152 BROADWAY HAVERSTRAW NY LLC

The names signed must be printed beneath
BY: JOSEPH GOLDBERGER       BY: JOSEPH GOLDBERGER
PrESIdenT + managing member

Printed: 12/5/2016

16038/2014 Judgment

Page 3 of 6

## DEMAND PROMISSORY NOTE

$6,098,000.20                              DATED AS OF JULY 14, 2008

**FOR VALUE RECEIVED**, BLUE BEVERAGE GROUP INC. and 152 BROADWAY
HAVERSTRAW NY LLC, having an address at 248 Flushing Avenue,
Brooklyn, NY 11205 ("Maker"), hereby covenants and promises to pay,
on demand, the sum noted above, to RYVKIE GOLDBERGER, of
_____, Brooklyn, New York ("Payee"), or order, at Payees'
address first above written or at such other address as the Payees
may designate in writing, all sums due pursuant to loans and or
advances made by Ryvkie Goldberger to the makers hereof, in lawful
money of the United States of America.


**IN WITNESS WHEREOF**, the Maker has executed this Note on the
date first above written.



BLUE BEVERAGE GROUP INC.              152 BROADWAY HAVERSTRAW NY LLC,

_____              _____
By: JOSEPH GOLDBERGER                By: JOSEPH GOLDBERGER

STATE OF NEW YORK}
COUNTY OF KINGS  }ss.:

On the __14__ day of MAY, in the year 2014, before me, the undersigned, a Notary Pubic in and for said State, personally appeared JOSEPH GOLDBERGER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

5/29/14

Aron Goldberger
Notary Public - State of New York
No. 01GO6186459
Qualified in Kings County
My Commission Expires April 28, 2016

18035/2014 Judgment

Page 5 of 6

10:07 AM
10/29/13
Accrual Basis

# Blue Beverage Group
## Account QuickReport
### As of December 31, 2012

| Transfer | 06/30/2010 | GOLDBERGER, JOSEPH | 33,512.98 |
|---|---|---|---|
| Transfer | 07/07/2010 | GOLDBERGER, JOSEPH #79 BEDFORD AVE #1 | 150,000.00 |
| Transfer | 11/09/2011 | Joseph Goldberger | 200,000.00 |
| Transfer | 11/16/2011 | Joseph Goldberger | 300,000.00 |
| Transfer | 07/07/2009 | Joseph Goldberger (HSBC Bank) | 300,000.00 |
| Deposit | 12/29/2009 | Joseph Goldberger / Apple | 100,000.00 |
| Deposit | 01/12/2010 | Joseph Goldberger / Apple | 100,000.00 |
| Deposit | 01/15/2010 | Joseph Goldberger / Apple | 150,000.00 |
| Deposit | 01/20/2010 | Joseph Goldberger / Apple | 200,000.00 |
| Deposit | 01/29/2010 | Joseph Goldberger / Apple | 32,000.00 |
| Deposit | 02/04/2010 | Joseph Goldberger / Apple | 200,000.00 |
| Deposit | 12/26/2010 | Joseph Goldberger / Apple | 32,000.00 |
| Deposit | 04/30/2010 | Joseph Goldberger / Apple | 32,000.00 |
| Deposit | 05/25/2010 | Joseph Goldberger / Apple | 150,000.00 |
| Transfer | 03/29/2010 | Joseph Goldberger / Apple | 32,000.00 |
| Transfer | 06/01/2010 | Joseph Goldberger / Apple | 33,512.98 |
| Transfer | 07/14/2010 | Joseph Goldberger / Apple | 100,000.00 |
| Deposit | 11/25/2009 | Joseph Goldberger / HSBC | 32,077.24 |
| Transfer | 07/29/2011 | Joseph Ryvkie Goldberger | 70,000.00 |
| Deposit | 02/17/2010 | Joseph Ryvkie Goldberger | 100,000.00 |
| Deposit | 03/08/2010 | Joseph Ryvkie Goldberger | 30,000.00 |
| Deposit | 03/11/2010 | Joseph Ryvkie Goldberger | 170,000.00 |
| Transfer | 08/11/2010 | Joseph Ryvkie Goldberger | 100,000.00 |
| Transfer | 08/19/2010 | Joseph Ryvkie Goldberger | 40,000.00 |
| Transfer | 09/02/2010 | Joseph Ryvkie Goldberger | 60,000.00 |
| Transfer | 09/29/2010 | Joseph Ryvkie Goldberger | 50,000.00 |
| Transfer | 10/08/2010 | Joseph Ryvkie Goldberger | 70,000.00 |
| Transfer | 10/14/2010 | Joseph Ryvkie Goldberger | 380,000.00 |
| Transfer | 11/02/2010 | Joseph Ryvkie Goldberger | 50,000.00 |
| Transfer | 11/04/2010 | Joseph Ryvkie Goldberger | 150,000.00 |
| Transfer | 12/23/2010 | Joseph Ryvkie Goldberger | 120,000.00 |
| Transfer | 01/13/2011 | Joseph Ryvkie Goldberger | 150,000.00 |
| Transfer | 01/21/2011 | Joseph Ryvkie Goldberger | 200,000.00 |
| Transfer | 03/11/2011 | Joseph Ryvkie Goldberger | 150,000.00 |
| Transfer | 04/04/2011 | Joseph Ryvkie Goldberger | 25,000.00 |
| Transfer | 09/01/2011 | Joseph Ryvkie Goldberger | 70,000.00 |
| Transfer | 11/18/2011 | Joseph Ryvkie Goldberger | 200,000.00 |
| Transfer | 11/22/2011 | Joseph Ryvkie Goldberger | 200,000.00 |
| Transfer | 11/30/2011 | Joseph Ryvkie Goldberger | 70,000.00 |
| Transfer | 12/29/2011 | Joseph Ryvkie Goldberger | 100,000.00 |
| Transfer | 02/14/2012 | Joseph Ryvkie Goldberger | 100,000.00 |
| Transfer | 02/29/2012 | Joseph Ryvkie Goldberger | 50,000.00 |
| Transfer | 03/16/2012 | Joseph Ryvkie Goldberger | 50,000.00 |
| Transfer | 03/22/2012 | Joseph Ryvkie Goldberger | 50,000.00 |
| Transfer | 03/29/2012 | Joseph Ryvkie Goldberger | 70,000.00 |
| Transfer | 03/30/2012 | Joseph Ryvkie Goldberger | 30,000.00 |

Printed: 12/5/2018

18038/2014 Judgment

Page 6 of 6

10:07 AM
10/29/13
Accrual Basis

## Blue Beverage Group
## Account QuickReport

| Type | Date | Name | Amount |
|------|------|------|--------|
| Transfer | 04/17/2012 | Joseph Ryvkie Goldberger | 50,000.00 |
| Transfer | 04/26/2012 | Joseph Ryvkie Goldberger | 50,000.00 |
| Transfer | 05/22/2012 | Joseph Ryvkie Goldberger | 15,000.00 |
| Transfer | 05/28/2012 | Joseph Ryvkie Goldberger | 100,000.00 |
| Transfer | 07/05/2012 | Joseph Ryvkie Goldberger | 100,000.00 |
| Transfer | 10/03/2012 | Joseph Ryvkie Goldberger | 15,000.00 |
| Transfer | 11/30/2012 | Joseph Ryvkie Goldberger | 100,000.00 |
| Transfer | 12/07/2012 | Joseph Ryvkie Goldberger | 15,000.00 |
| Transfer | 12/14/2012 | Joseph Ryvkie Goldberger | 15,000.00 |
| Deposit | 05/28/2009 | Joseph Ryvkie Goldberger (HSBC) | 100,000.00 |
| Deposit | 05/28/2009 | Joseph Ryvkie Goldberger (HSBC) | 140,000.00 |
| Transfer | 06/03/2009 | Joseph Ryvkie Goldberger (HSBC) | 50,000.00 |
| Transfer | 03/20/2009 | Joseph Ryvkie Goldberger (HSBC) | 100,000.00 |
| Transfer | 09/11/2009 | Joseph Ryvkie Goldberger (HSBC) | 127,000.00 |
| Transfer | 04/06/2012 | Joseph Ryvkie Goldberger | 50,000.00 |
| Transfer | 03/29/2010 | Joseph Goldberger / Apple (Trett & Lowy) | 100,000.00 |
| | | | 5,869,103.20 |
| | | | |
| Deposit | 12/10/2008 | JRG Trust | 70,000.00 |
| Deposit | 01/25/2010 | JRG Trust | 100,000.00 |
| Deposit | 07/14/2008 | Wire JRG Trust (HSBC) | 33,897.00 |
| Deposit | 12/02/2008 | Wire JRG Trust (HSBC) | 25,000.00 |
| | | | 228,897.00 |

Printed: 12/5/2018